

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

RALD C. MANN
TORNEY GENERAL

<u>OVERRULED</u>

BY Supreme Court
State v. Glas s 1ε7 S. W. 2nd

Honorable D. C. Greer
State Highway Engineer
Austin, Texas

Dear Sir:

Opinion No. O-3561
Re: Proper disposition of the
twenty-five cents (25¢)
collected from applicant
for certificate of title
and retained by the Assessor-
Collector of taxes as "desig-
nated agent," under House
Bill 407, Chapter 4, Acts
46th Legislature, as amended
by House Bill 206, Acts, Reg-
ular Session, 47th Legisla-
ture. (Cited as Certificate
of Title Act)

Your letter of May 16, 1941, submits for our
opinion the following question, which we quote therefrom:

"We are today in receipt of a Resolution
adopted at the annual meeting of the Tax Assessor-
Collectors Association of Texas at Houston last
week. It will be noted that the Tax Assessor-
Collectors are greatly concerned with the inter-
pretation of that portion of House Bill No. 205
pertaining to the use of fees retained by the
Tax Collectors for the issuance of certificates
of title.

"Section 6 of House Bill No. 205, passed
at the Regular Session of the 47th Legislature,
amends Section 57, House Bill 407, Chapter 4,
Acts of the 46th Legislature, to read in part
as follows:

"'Section 57. Each applicant for a certifi-
cate of title or reissuance thereof shall pay
to the designated agent the sum of Fifty ($0.50)

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. D. Greer, Page 2

Cents, of which Twenty-five ($0.25) Cents shall be retained by the designated agent from which he shall be entitled to sufficient money to pay expenses necessary to efficiently perform the duties set forth herein, * * *'

"The Department is very interested in that the Tax Assessor-Collectors have sufficient funds and assistants to efficiently administer the duties imposed upon him by the Certificate of Title Act. We have been informed that in many counties the Commissioner's Court will not permit the Tax Assessor-Collector to employ sufficient help to properly handle these duties."

The controlling question before us is whether the twenty-five cents, collected under Section 57 of the Certificate of Title Act, (Article 1436, Vernon's Annotated Civil Statutes, as amended by House Bill 205, Regular Session, 47th Legislature) from each applicant for a certificate of title, by the County Tax Assessor-Collector, and retained by him "to pay expenses necessary to efficiently perform the duties set forth" under said Act, is to be considered as a "fee" or "commission" which the Assessor-Collector is authorized and required to collect, as such officer and in such official capacity, and to deposit in the Officers' Salary Fund, in counties where such official is on a salary basis, or retain and account for as fees of office, where such official is on a fee basis, or, on the other hand, whether such twenty-five cents is collected by the person holding the office of Assessor-Collector, but as the statutory agent of the Highway Department under the Act rather than as such county Tax Assessor-Collector, and therefore not controlled by the requirements and provisions of the pertinent fee statutes.

Article 3912e, Section 5, Revised Civil Statutes, provides as follows:

"It shall be the duty of all officers to charge and collect in the manner authorized by law all fees and commissions which are permitted by law to be assessed and collected for all official service performed by them. As and when such fees are collected they shall be deposited in the Officers' Salary Fund, or funds provided in this Act. In event the Commissioners' Court

finds that the failure to collect any fee or
commission was due to neglect on the part of
the officer charged with the responsibility
of collecting same, the amount of such fee or
commission shall be deducted from the salary
of such officer. Before any such deduction is
made, the Commissioners' Court shall furnish
such officer with an itemized statement of the
uncollected fees with which his account is to
be charged, and shall notify such officer of
the time and place for a hearing on same, to
determine whether such officer was guilty of
negligence, which time for hearing shall be
at least ten days subsequent to the date of
notice. Unless an officer is charged by law
with the responsibility of collecting fees, the
Commissioners' Court shall not in any event
make any deductions from the authorized salary
of such officer." (Underscoring ours)

In passing, let us note that the "fees and com-
missions" which are directed to be collected and paid into
the Officers' Salary Fund are those for all _official_ services
performed by them. The same point may be made with reference
to the official character of the "fees and commissions" men-
tioned in Section 3, Article 3912e, Revised Civil Statutes,
quoted, in part, as follows:

"In all cases where the Commissioners' Court
shall have determined that county officers or
precinct officers in such county shall be com-
pensated for their services by the payment of an
annual salary, neither the State of Texas nor any
county shall be charged with or pay to any of the
officers so compensated, any fee or commission
for the performance of any or all of the duties
of their offices but such officers shall receive
said salary in lieu of all other fees, commissions
or compensation which they would otherwise be au-
thorized to retain; provided, however, that _the_
_assessor and collector of taxes_ shall continue to
collect and retain for the benefit of the Officers'
Salary Fund or funds hereinafter provided for _all_
_fees and commissions which he is authorized under_
_law to collect;_ and it shall be his duty to account

> for and to pay all such monies received by him
> into the fund created and provided for under
> the provisions of this Act; . . ." (Underscoring ours)

The foregoing statutes involve counties in which the Assessor-Collector is on a salary basis. In counties where such official is on a fee basis the same results and conclusions would follow, because if the twenty-five cents collected by such Assessor-Collector, under Section 57 of the Certificate of Title Act, is a "fee or commission" required by law to be collected by an Assessor-Collector, in such official capacity rather than as statutory agent for the Highway Department, then, instead of paying such fees and commissions into the Salary Fund of the county, they would be accounted for by such official as fees of office, and allowed to be retained as compensation for official services, up to the maxima fixed by Articles 3883 and 3891, Revised Civil Statutes.

If the foregoing statutes are applicable to the instant case, then it would follow, whether the Assessor-Collector is on a fee basis or on a salary basis, that the expenses of complying with the new duties imposed upon such official by the Certificate of Title Act and the salaries of assistants and deputies necessary by reason thereof, must be approved and authorized by the Commissioners' Court, under Articles 3902, 3899, and 3899b, Revised Civil Statutes.

But if such additional expenses and salaries are not to be considered as having any legal relation to the constitutional and statutory duties of the Office of Tax Assessor-Collector, as such, and if the twenty-five cents collected under Section 57 of the Certificate of Title Act is not a "fee" or "commission" of such Office, then such sum, or so much thereof as reasonably necessary for expenses, could be retained by this statutory agent of the Highway Department, without compliance with the statutes above adverted to.

Upon this question we find no authorities, but turn to an interpretation of the pertinent constitutional and statutory provisions for a proper determination.

Article VIII, Section 14, Constitution of Texas, creates the office of Assessor and Collector of Taxes and

Honorable D. C. Greer, Page 5

defines the duties of such office as follows:

"There shall be elected by the qualified
electors of each county at the same time and
under the same law regulating the election of
State and County officers, an Assessor and Col-
lector of Taxes, who shall hold his office, for
two (2) years and until his successor is elected
and qualified; and such Assessor and Collector
of Taxes shall perform all the duties with re-
spect to assessing property for the purpose of
taxation and of collecting taxes as may be pre-
scribed by the Legislature." (Underscoring ours)

Chapters 7 and 8 of Title 122, Revised Civil Stat-
utes, define the statutory duties which have been imposed
upon this constitutional officer, and a glance at the pro-
visions thereof indicates, generally, that such duties con-
cern the collection of the public revenues whether arising
from taxes or fees. This is in furtherance of the above
constitutional provision. This office, therefore, originates
and exists under the powers of taxation, as distinguished
from the police power.

On the other hand, the Certificate of Title Act is
enacted and finds its basis under the police power rather
than tax power of the State. This is made clear by the de-
clared intent and purposes of the Legislature in Section 1,
of the Act, providing as follows:

"This Act shall be referred to, cited,
and known as the 'Certificate of Title Act,'
and in the enactment hereof it is hereby de-
clared to be the legislative intent and pub-
lic policy of this State to lessen and prevent
the theft of motor vehicles and the importa-
tion into this State of, and traffic in, stolen
motor vehicles, and the sale of encumbered
motor vehicles without the enforced disclosure
to the purchaser of any and all liens for which
any such motor vehicle stands as security, and
the provisions hereof, singularly and collective-
ly, are to be liberally construed to that end.
The following terms, as herein defined, shall
control in the enforcement and construction of
this Act."

Section 28 of the Certificate of Title Act constitutes the county Tax Assessor-Collector a statutory agent for the enforcement of this Act, stemming as it does from the police power rather than the tax power, by the following definition:

"The term 'designated agent' means each county tax collector in this State who may perform his duties under this Act through any regular deputy."

For what purpose is the Assessor-Collector thus designated and constituted a statutory agent or "designated agent?" In all reason, the Assessor-Collector cannot be an agent for himself; we therefore submit that in the instance of the Certificate of Title Act, such official is acting as agent for some other duly constituted official or department of the Government. Otherwise, Section 56 of the Act is meaningless, because the Legislature might as well have referred to the Assessor-Collector by his official name, as such, in charging him with the duties imposed by the Act, rather than creating, for that purpose, the status of agency.

The Department in this instance, for which the County Assessor-Collector is designated and constituted an agent under the Certificate of Title Act, is the Highway Department of Texas. As originally enacted (House Bill 407, Chapter 4, Acts, Regular Session, 46th Legislature) the Certificate of Title Act placed the entire administration and enforcement of said Act upon the Department of Public Safety of the State of Texas. House Bill No. 205, Acts, Regular Session, 47th Legislature, amends Section 25 of said original Act to substitute the State Highway Department of the State of Texas for the Department of Public Safety of the State of Texas, in the definition of the term "department", and adds a new section; i. e., Section 24a, as follows:

"The certificate of title section, and its personnel, property, equipment, and records, now a part of the Department of Public Safety of the State of Texas, are hereby transferred to and placed under the jurisdiction of the Highway Department of the State of Texas."

Honorable D. C. Greer, Page 7

Hence, wherever in the original Act, as well as in the amending Act, the word "Department" appears it will be understood to mean the State Highway Department. Keeping this in mind, we point to the following provisions of the Certificate of Title Act, which directly or by implication, support the theory of agency above indicated.

Section 30, of the Certificate of Title Act, provides that before any motor vehicle brought into the State by any person other than a manufacturer or importer, which is required to be registered or licensed within the State, can be sold or incumbered by lien, an application, on a form to be prescribed by the Department, must be made to the "designated agent" of the county wherein the transaction is to take place, for a certificate of title which application must be accompanied and supported by the proof and papers required by statute.

Sections 31 and 32 of the Act, as amended, set out the principal duties of such "designated agent," in connection with such application, as follows:

"Every designated agent in this State receiving an application for certificate of title shall, when the provisions hereof have been complied with, issue a receipt marked 'Original' to the applicant and shall note thereon the required information concerning the motor vehicle and the existence or nonexistence of liens as disclosed in the application and deliver such receipt upon payment of the required fees to the applicant; provided however, that in the event there is a lien disclosed in the application, the said receipt shall be issued in duplicate, one of which shall be marked 'Original' and shall be mailed or delivered by every such designated agent to the first lien holder as disclosed in said application; the other said copy shall be marked 'Duplicate Original' and shall be mailed or delivered to the address of the applicant as disclosed in the said application, and such receipt pending the issuance of the certificate of title shall authorize the operation of such motor vehicle on the highway and public places within this State for a period of not to exceed ten (10)

Honorable D. C. Greer, Page 8

days and upon the expiration of such period of
time shall cease to be effective for any purpose,
but may be renewed under such reasonable rules
and regulations as may be promulgated by the
Department."

"Every designated agent within this State
shall, on the same day issued by him, forward
to the Department, by mail prepaid postage, copies
of all receipts issued by him together with such
evidences of title as may have been delivered to
him by the several applicants, and the Depart-
ment within five (5) days after receiving such
application, if upon inspection thereof it is
satisfactorily shown that the certificate of title
should issue, shall issue certificate of title
marked 'Original' on the face thereof and send
the same to the address of the applicant as given
in his application by first class mail; provided
however, that in the event there is a lien dis-
closed in the application the said certificate
of title shall be issued in duplicate, one of
which shall be marked 'Original' and shall be
mailed to the address of the first lien holder
as disclosed in said certificate of title by
first class mail; the copy of said certificate
of title shall be marked 'Duplicate Original'
and shall be sent by first class mail to the
address of the applicant as given in his appli-
cation."

Section 38 of the Act provides that the Department
may refuse issuance of a certificate of title, or having
issued a certificate of title, suspend or revoke the same
for stated grounds and reasons, and Section 39 provides that
the person thereby aggrieved "may apply to the designated
agent of the county of such interested persons domicile for
a hearing, whereupon such designated agent shall, on the same
day such application for hearing is received by him, notify
the Department of the date of the hearing, which shall not
be less than ten (10) days nor more than fifteen (15) days,
and at such hearing such applicant and the Department may
submit evidence, and a ruling of the designated agent shall
bind both parties as to whether or not the Department has
acted justly in the premises." An appeal is provided from

Honorable D. C. Greer, Page 9

this ruling of the designated agent to the County Court and the Department will be governed by the final decision of such Court in the issuance of the controverted certificate of title. Is the "designated agent," in this instance, performing any of the official duties of the office of Assessor-Collector, as created by the Constitution? We do not think so.

Section 63 provides that "the Department shall provide each 'designated agent' within this State with a supply of receipt forms for issuing", and "shall promulgate such reasonable rules and regulations as are herein provided for on or before August 1, 1939, and provide each designated agent within the State with at least five (5) copies thereof."

From a reading of the entire Certificate of Title Act, it is apparent that the administration and enforcement of such Act is vested, solely and completely, in the Highway Department of the State of Texas rather than in the various Assessors- Collectors of Texas, in their elective and official status. The certificate of title which allows motor vehicles to be operated upon the highways of Texas and is a prerequisite to the sale or transfer of such vehicle, is issued by the Highway Department. The only role which the Assessor-Collector plays is to issue a temporary receipt pending the issuance of such certificate of title and to act,for the Department, in the refusal or suspension of a Certificate, under the sections of the Act above cited. For practical enforcement and administrative purposes, the Legislature doubtless conceived that it would be more economical and effective to call upon the various Assessors-Collectors of the two hundred fifty-four counties of Texas-- an existing setup-- to perform these duties and functions preliminary to the issuance of a certificate of title, rather than to require the Highway Department to have its employees and deputies stationed in each of said counties for such purposes. But in doing this the Legislature was careful to refer to such county official as "designated agent", rather than by his official title of Assessor-Collector, and each and every duty performed under the Act is done as such "designated agent" rather than in their constitutional and statutory capacity as Assessor-Collector of Taxes. Such duties do not involve the assessing or collecting of any taxes or revenues, for which the office

of Assessor-Collector was created by the Constitution and regulated by statute. But such duties are performed by such Assessor-Collector as the alter ego of the Highway Department in furtherance of its duties, stemming from the police power. It is a mere farming out of administrative functions which we think is entirely lawful.

If this position is correct then it follows that Section 57 of the Certificate of Title Act, quoted at the outset of this opinion, does not involve "fees or commissions" to be accounted for or paid into the Salary Fund under the statutes hereinabove adverted to and discussed, as controlling upon County Assessors-Collectors and other district and county officials.

As additional argument in support of this conclusion we point to the fact that, unlike the generality of "fees and commissions," the 25¢ retained out of the 50¢ collected from the applicant for a certificate of title, is for the purpose and in the nature of reimbursement for expenses incurred rather than payment or compensation for services performed. This is indicated by the provision that out of the 25¢ retained by the "designated agent" he "shall be entitled to sufficient money to pay expenses necessary to efficiently perform the duties set forth herein." It seems that the proper view of the matter is that the entire 50¢, collected from an applicant for a certificate of title, is in truth and in fact collected for and on behalf of the Highway Department, but the Legislature, out of the necessities of the case, allows the Department's agent to retain a sufficient amount to defray expenses incurred on behalf of the Highway Department.

That this is the proper interpretation is indicated by the provisions of Section 57 of the Act, prior to its recent amendment, to the effect that the sum of 25¢ should be collected by the "designated agent" from each applicant for a certificate of title and forwarded to the Department, out of which the Department should return to such "designated agent," each month, 10¢ for each application to which a certificate of title has been issued. From this legislative background, the evident purpose of the amendment to Section 57, now under consideration here, was not only to increase the amount collected from the applicant, but also to avoid the unnecessarily indirect and circuituous method theretofore employed for reimbursing such

Honorable D. C. Greer, Page 11:

designated agent, by allowing said agent to retain sufficient funds for this purpose, remitting the balance to the Highway Department.

This interpretation and construction, of course, contemplates that such portion of the 25¢ retained by the "designated agent," as is not reasonably necessary for paying expenses incident to the efficient performance of the duties of such agent, shall be forwarded to the Highway Department for deposit in the State Highway Fund, along with the 25¢ forwarded, on collection, to such Department. Such balance or surplus over necessary expenditures would not, for the reasons hereinabove stated, be considered "fees or commissions," to be paid into the Officers Salary Fund, or accounted for as fees of office, under existing fee statutes.

Trusting the foregoing satisfactorily answers your inquiry, we are

APPROVED MAY 29, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:LM


RECONSIDERED
AND HELD FOR
RE-VIEWED IN
LIMITED
CONFERENCE